UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TROY ALAN SPEARS, | ) | Civil Action No.: 4:17-CV-02710-TER |
| | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| -vs- | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed his application for DIB and SSI on September 14, 2012, alleging inability to work since February 1, 2009. (Tr. 195). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on August 27, 2014, at which time Plaintiff testified. A vocational expert (VE) was not present. The Administrative Law Judge (ALJ) issued an unfavorable decision on October 29, 2014, finding that Plaintiff was not disabled

within the meaning of the Act. (Tr. 195-202). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council granted and remanded to the ALJ on January 28, 2016. On May 26, 2016, another hearing was held. The ALJ issued an unfavorable decision on March 16, 2017, finding Plaintiff was not disabled within the meaning of the Act. (Tr. 17-28). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on August 10, 2017, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4). Plaintiff filed this action on October 6, 2017.

## B. Plaintiff's Introductory Facts

Plaintiff was born on December 17, 1962, and was approximately forty-six years old at the time of the alleged onset. (Tr. 98). Plaintiff completed his education through at least high school and has past work experience as security technician and retail associate. (Tr. 27). Plaintiff alleges disability initially due to AIDS and anger issues. (Tr. 162). Pertinent testimony and records will be summarized under the relevant issue heading.

## C. The ALJ's Decision

In the decision of March 16, 2017, the ALJ made the following findings of fact and conclusions of law (Tr. 17-28):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: human immunodeficiency virus (HIV) and peripheral neuropathy(20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he would be limited to frequent handling and fingering.

6.      The claimant is able to perform past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ's Step Four findings are unexplained and are unsupported by substantial evidence. Plaintiff also argues the ALJ did not properly weigh doctors' opinions. Plaintiff argues the ALJ's RFC is unsupported because it does not include any mental limitations, where the ALJ's finding was mild limitations at an earlier step and where the ALJ afforded significant weight to Dr. Van Kirk's opinion. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.      LEGAL FRAMEWORK

### 1.      The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

3

under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

customarily performed in the economy or as the claimant actually performed the work. See 20

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §

423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability

to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

claimant can perform alternative work and that such work exists in the regional economy. To satisfy

that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs

available in the national economy that claimant can perform despite the existence of impairments

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the

Commissioner satisfies that burden, the claimant must then establish that he is unable to perform

other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the

Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner

are supported by substantial evidence and whether the Commissioner applied the proper legal

standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## B.    ANALYSIS

### PRW

Plaintiff argues the ALJ did not make specific findings of the demands of Plaintiff's PRW and thus did not comply with SSR 82-62. Plaintiff argues the PRW of retail associate did not reach the dollar amount of monthly SGA for the 2000 period at 8 months for total of $5,068.84. Plaintiff argues PRW of security consultant at SVP7 is not clearly compatible with Plaintiff's mental functioning and needs VE testimony to make clear if Plaintiff could perform.

At the first hearing on August 27, 2014, Plaintiff testified the job with ADT ended in 2009 for several reasons. Plaintiff's driving record fell outside of the rules that were changed. Plaintiff's position was changed from an installer to an inspector because of his neuropathy and dizzy spells. (Tr. 79). "I nearly fell through a roof a couple times, and I said, no, enough is enough." (Tr. 79). Plaintiff's employer had to change his job from installing to inspecting to keep him from a more dangerous situation. (Tr. 80). The ALJ asked if chronic fatigue, HIV, medically induced

neuropathy, and anxiety/irritability/mood disorder contributed to difficulties driving. Plaintiff

testified the fatigue made it dangerous to do a lot of driving. (Tr. 80). Plaintiff testified he did not

work after 2009. Plaintiff had difficulty with dropping things and some days had difficulty

balancing. (Tr. 81-82). Plaintiff testified he had phantom pains associated with his neuropathy that

felt like a needle in his foot or leg. (Tr. 82). The ALJ asked if Plaintiff experienced this problems

with neuropathy while working for ADT. Plaintiff testified "it was getting progressively worse the

entire time." (Tr. 82). Plaintiff testified medication for it helped him sleep at night. (Tr. 83).

Plaintiff testified he typically did not know if he injured himself unless he saw blood. (Tr. 83).

Plaintiff takes a nap for 1-3 hours a day. (Tr. 84). Plaintiff testified the chronic fatigue could not

be corrected because it was attributable to the medication keeping him alive. (Tr. 84). Plaintiff very

rarely drives. (Tr. 89). Plaintiff testified he could not go back to the same job now. (Tr. 91). "I

would have to be able to do everything a regular installer would have to do, and I can't do that."

Plaintiff was only doing inspections because of his neuropathy and the affect on his balance. (Tr.

92). Plaintiff stated again he nearly fell through a roof a couple of times. (Tr. 92). Plaintiff testified

he changed to inspecting in 2004 or 2005. Plaintiff testified the hardest part was driving and his area

was so big at ADT that every day he would put several hours behind the wheel. Plaintiff testified

it was difficult because he would start to nod off. Plaintiff testified he discussed the medication side

effects with the doctors and there were no other medication options. (Tr. 92).

At the hearing on May 26, 2016, Plaintiff testified if he had a sit down job with gross

manipulation like packing bananas that it would take him longer than others. (Tr. 48). Plaintiff

testified the official reason he was let go from his job was his company's driving score was too high,

but the real reason was that he could no longer do the job he had been doing of installing alarms and

crawling through attics and under houses, and he was limited to starting up existing systems. (Tr. 49). The distance driving was difficult even with the existing system work, and it was difficult staying awake while doing that driving. (Tr. 49-50). Plaintiff testified the chronic fatigue was assumed to be from the HIV medication side effects. (Tr. 50). The ALJ asked if all he had to do was restart the alarm and did not have to worry about the driving, could he do that. Plaintiff testified he would be half as slow as another worker and his boss would not be okay with that. (Tr. 50). Plaintiff testified the drive to the hearing was nerve wracking because he had to try to keep himself awake to drive. (Tr. 51). Plaintiff gets a sudden wave of fatigue around lunchtime. (Tr. 52). Plaintiff reported having upset "fits" with mood swings and anger at inanimate objects. (Tr. 54). The ALJ asked if this occurred with alarm system work; Plaintiff testified yes. (Tr. 55). Plaintiff would return to the work van and scream and then go back inside. Plaintiff testified his hands were not doing what he needed them to do with the alarm system when this occurred. (Tr. 55). Plaintiff testified he did not have problems with people at work and did not work in as much proximity to people due to the remote location work. (Tr. 55-56). Plaintiff testified he would calm down after an hour. (Tr. 56). Plaintiff testified he had a hard time feeling objects. (Tr. 59). Neuropathy was a side effect of his HIV medication. (Tr. 63).

The record includes several work history/description reports. On December 5, 2011, Plaintiff reported inspecting security alarms as past work. (Tr. 440). Plaintiff reported he had to drive and inspect alarms in residential settings. Plaintiff had to use machines, tools, equipment, technical knowledge/skills, and write reports. (Tr. 441). Plaintiff reported he walked/stood/sat up to 4 hours each in a workday. Plaintiff reported various hours(1-4) for stooping, climbing, kneeling, crouching, crawling, reaching, and handling. (Tr. 441). On October 11, 2012, Plaintiff reported jobs from

January to August 2000 of retail associate and of security technician from August 2000 to February 2009. (Tr. 476). Other details about the jobs were not completed. On a work history report dated November 14, 2012, Plaintiff noted up to five jobs since 1997. (Tr. 496). For the security technician job, Plaintiff reported he installed/tested security systems and instructed customers how to use. (Tr. 498). For hours of different functions, Plaintiff wrote in "various" for each. (Tr. 498). Plaintiff indicated the heaviest weight lifted was 50 pounds. For the retail associate job, Plaintiff indicated he stood up to 6 hours a day and sat for 0 hours a day. (Tr. 499). Plaintiff operated a register and stocked shelves. Plaintiff was also a retail associate from October 1998 to February 1999. (Tr. 497). Plaintiff indicated on the report that once he began to develop neuropathy caused by the HIV medication, his equilibrium suffered and it became too dangerous to go into attics or climb ladders for ADT. (Tr. 503). ADT accommodated him by changing his job from installing new systems to testing existing systems. ADT let him go because of 4 traffic accidents and many moving citations. (Tr. 503). On August 20, 2014, a work background report indicated ADT security system installation and repair from 2000 to 2009. (Tr. 561). Nothing further was indicated.

The ALJ here found:

**6. The claimant is able to perform past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a security technician and retail associate. Based on the claimant's residual functional capacity, he is capable of performing each occupation both as he performed them and as they are generally performed.

(Tr. 27).

Pursuant to 20 C.F.R. §416.920(a)(4) (iv), "[i]f you can still do your past relevant work, we will find that you are not disabled." SSR 82–62 sets forth the procedures used at Step Four of the

sequential analysis when determining whether the claimant's RFC permits him to return to his PRW. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)," and, if the claimant can return to his PRW, he may be found "not disabled." SSR 82–62.

The ALJ is required to consider:

Determination of the claimant's ability to do PRW requires a careful appraisal of **(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;** (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and **must be developed and explained fully** in the disability decision. Since this is an important and, in some instances, a controlling issue, **every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit**.

SSR 82-62(emphasis added).

Further, SSR 82–62 requires the following specific factual findings when the ALJ determines that a claimant can meet the physical and mental demands of PRW:

The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.
...
In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
1. A finding of fact as to the individual's RFC.
**2. A finding of fact as to the physical and mental demands of the past job/occupation**.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62(emphasis added).

The ALJ is required to consider the Plaintiff's testimony as to why past work could not be performed. *Harris v. Sec'y Dep. of Health and Human Servs.*, 866 F.2d 1415 (1989)(unpublished)(citing SSR 82-62). In *Harris*, the ALJ's findings were devoid of any reference or discussion of the plaintiff's contention of what caused his inability to continue his job as a security guard. *Id.* Because the ALJ did not discuss plaintiff's testimony, the Fourth Circuit found the ALJ's findings were deficient under the mandates of SSR 82-62 and remanded the case. *Id.* Here, the ALJ did not expressly consider Plaintiff's testimony of the work requirements and his reason for ceasing the job. It is unclear to the reviewing court whether the ALJ considered, as required by SSR 82-62, Plaintiff's "statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements." *See* SSR 82-62. Such error requires remand. *See Harris*, 866 F.2d 1415.

The ALJ has not "developed and explained fully," or provided a rationale that shows "clearly how specific evidence [the evidence required to be considered by SSR 82-62] leads to a conclusion" that Plaintiff can return to PRW. *See* SSR 82-62. This is not harmless error as there was no alternative finding, procession to Step 5, or any VE testimony. Defendant's assertion that the ALJ complied with the regulations in his determination regarding PRW is not reflective in the ALJ's opinion, as there is a lack of "careful appraisal" by the ALJ of Plaintiff's "statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements," as required by SSR 82-62.

In light of the court's finding that this matter should be remanded for further consideration, the court need not address Plaintiff's remaining issues. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional

arguments).  Upon remand, the ALJ should take into consideration all of Plaintiff's remaining allegations of error.

### III.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.


February 13, 2019
Florence, South Carolina

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge